UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____
                                                  |
BRENDA BILLINGS-CARTER,                           |   Case No. 1:10-cv-792
as personal representative of the estate of Ann Billings, |
                                                  |
    Plaintiff,                                    |
                                                  |   HONORABLE PAUL L. MALONEY
        v.                                        |
                                                  |
UNITED STATES OF AMERICA,                         |
                                                  |
    Defendant.                                    |
                                                  |
_____

**OPINION and ORDER**

**Granting the Defendant's Motion to Set Aside State-Court Defaults;
Granting the Defendant's Motion to Dismiss for Lack of Subject-Matter Jurisdiction;
Entering Final Judgment in Favor of the Defendant;
Terminating and Closing the Case**

Ms. Ann Billings died on December 2, 2005, allegedly as a result of dental malpractice perpetrated by MGH Family Health Center d/b/a Muskegon Family Care ("the FHC") and its physician's assistant William A. Clark, PA-C ("Clark") between November 30, 2004 and November 8, 2005.  Plaintiff Brenda Billings-Carter, proceeding as the personal representative of the estate of the late Ann Billings ("Billings"), brought suit against the FHC and Clark in Muskegon County Circuit Court on about May 3, 2010, allegedly serving the FHC with the complaint on May 25, 2010 and Clark on June 1, 2010.  Billings moved for default against the FHC and Clark on July 19, 2010; submitted a Notice of Entry of Default on July 26, 2010; and filed motions for default judgment against both of them on August 6, 2010.  The United States Attorney's Office received a copy of the

complaint from HHS on August 5, 2010, *see* Notice of Removal filed August 10, 2010 ("Removal Notice") ¶ 3, and promptly asked Billings' counsel to voluntarily agree to ask the court to set aside the defaults, but Billings' counsel declined, leading the government to file a notice of removal to this court on August 10, 2010.

As the defendant federal government explains, the FHC is eligible for coverage under the Federally Supported Health Centers Assistance Act of 1992, codified as 42 U.S.C. § 233(g) through (n), and it undisputed that all times relevant to Billings's complaint, the United States Department of Health and Human Services's Bureau of Primary Health Care deemed the FHC to be an employee of the federal government for purposes of potential liability and liability protection under the Federal Tort Claims Act ("FTCA"). *See* Doc 13-1, Declaration of Meredith Torres, Senior Attorney in HHS Office of the General Counsel, General Law Division, executed August 18, 2010 ("Torres Dec") ¶ 5; *see also* Torres Dec, Exhibit ("Ex") 1 at unnumbered pages 1-2 (Letter from Assistant Surgeon General Sam S. Shekar, M.D., M.P.H., to FHC's Executive Director Thomas E. Lufkin dated May 6, 2004). Physician's assistant Clark was an employee of the FHC at all times relevant to Billings's complaint, and thus he too was deemed to be an employee of the federal government for purposes of FTCA protection. *See* Torres Dec ¶ 6 and Torres Dec Ex 1 at unnumbered pages 3-4 (Letter from HHS-Health Resources and Services Administration-Bureau of Primary Health Care's Associate Administrator A. Michelle Snyder to FHC's Lufkin dated May 9, 2005).

<u>Federal Court's Authority to Set Aside State-Court Default in Removed Cases.</u>

Federal Rule of Civil Procedure 55(c), entitled Setting Aside Default, provides as follows: "For good cause shown the court may set aside an entry of default and, if a judgment by default has

been entered, may likewise set it aside in accordance with Rule 60(b)."[1]  This authority applies to defaults which were entered in state court prior to timely, proper removal of the case to federal court, because "'when a case is removed the federal courts takes it as though everything done in the state court had in fact been done in the federal court.'"  *Green v. US*, 2007 WL 541968, *1 (W.D. Mich. Feb. 16, 2007) (quoting *Munsey v. Testworth Labs.*, 227 F.2d 902, 903 (6th Cir. 1995) (quoting *Savell v. Southern Ry. Co.*, 93 F.3d 377, 379 (5th Cir. 1937))); *see also Zolman v. US*, 170 F. Supp.2d 746 (W.D. Mich. 2001).  The state-court judge had the power to reexamine his own order any time prior to final judgment, and "[t]he power to reexamine is not lost by the transfer from the state to the federal system."  *Newhouse v. Hansen*, 2006 WL 2583412, *4 (N.D. Ohio Sept. 7, 2006) (O'Malley, J.) (citing *Hill v. USF&G Co.*, 428 F.2d 112, 115 (5th Cir. 1970)).

"Rule 55(c) leaves the decision of whether to set aside an entry of default to the sole discretion of the trial judge", *GE Commercial Finance Business v. Binyan Michigan, LLC*, 2007 WL 1017002, *2 (E.D. Mich. Mar. 29, 2007) (citing *Shepherd Claims Serv. v. William Darrah & Assocs.*, 796 F.2d 190, 193 (6th Cir. 1986)), and the district judge "enjoys considerable latitude" to grant such relief, *Davey v. St. John Health*, 297 F. App'x 466, 472 (6th Cir. 2008) (Martin, Rogers, Sutton) (quoting *O.J. Distrib., Inc. v. Hornwell Brewing Co., Inc.*, 340 F.3d 345, 353 (6th Cir. 2003))..  In determining whether good cause exists to set aside a default, the court considers (1) whether the plaintiff will be prejudiced, (2) whether the defendant has a meritorious defense, and (3) whether any culpable conduct by the defendant led to the default.  *See US v. $22,050 in U.S.*

---

[1] If the plaintiffs had secured a default *judgment* from the state court, the government would have to show its entitlement to relief from judgment under one of the criteria set forth in FED. R. CIV. P. 60(b).  *See Citizens Bank v. Parnes*, 376 F. App'x 496, 504 n.4 (6th Cir. 2010) (C.J. Batchelder, Sutton, D.J. Wiseman); *Von Wiegen Corp. v. Koch*, 2007 WL 2071781, *1 (E.D. Ky. July 19, 2007) (Joseph M. Hood, J.) (citing *Burrell v. Henderson*, 434 F.3d 826, 832 (6th Cir. 2006)).

*Currency*, 595 F.3d 318, 324 (6th Cir. 2010) (citing *Waifersong, Ltd. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992)).

There is no allegation that the federal government engaged in any culpable conduct which led to the entry of the default. Billings alleges only that the medical providers originally named as defendants neglected to respond to her complaint and Notices of Intent to Sue as she contends was required under MICH. COMP. LAWS § 600.2912b (governing medical-malpractice actions). *See* P's Opp at 7-8. Billings identifies no precedent, however, holding that such alleged dilatoriness may be attributed to the federal employer, which was in no way dilatory throughout these proceedings, and the court finds no such precedent. Equally unavailing is Billings' attempted reliance on MICH. COMP. LAWS § 600.5838a, *see* P's Opp at 2, when precedent unequivocally holds that the accrual of a claim for FTCA purposes is determined by federal law alone, not state law. Therefore, the federal employer acted with all reasonable dispatch once it learned of the lawsuit, and the first factor favors setting aside the default. *Contrast Vesligaj v. Peterson*, 331 F. App'x 351, 354 (6th Cir. 2009) (per curiam) (Guy, Gilman, Cook) (declining to set aside default and default judgment, panel noted, "DSI, aware of this action since it joined in the removal, has offered no explanation for its having delayed almost a year in its defense of the action. Nor could it claim ignorance of the proceedings since Peterson, its majority shareholder, was also a defendant.").

As will be shown below, the federal government has a meritorious administrative-exhaustion defense, so the second factor favors setting aside the default as well. *See Krowtoh II, LLC v. ExCelsius Int'l, Ltd.*, 330 F. App'x 530, 535 n.5 (6th Cir. 2009) (<u>Clay</u>, Gibbons, D.J. Greer) ("Although the parties do not contest this issue on appeal, the presence of meritorious defenses weighs heavily in favor of setting aside the default."); *contrast US v. Goist*, 378 F. App'x 517, 520

(6th Cir. 2010) (Kennedy, Cole, D.J. Jordan) (affirming district court's refusal to set aside default and default judgment entered against *pro se* prisoner plaintiff, stating, "The government would have been prejudiced by the setting aside of the default because it would have been subject to additional frivolous filings. Also, . . . Goist failed to assert any meritorious defense to the government's claim . . . .").

"[W]hen the first two factors militate in favor of setting aside the entry of default, it is an abuse of discretion for a district court to deny a Rule 55(c) motion in the absence of a wilful failure of the moving party to appear and plead." *GE Commercial Finance Business*, 2007 WL 1017002 at *2 (citing *Shepherd Claims Serv.*, 796 F.2d at 193). In any event, the third factor favors setting aside the state-court default as well. For one thing, any oversight in Clark and FHC neglecting to forward the state-court complaint and summons to the federal government, did not cause an egregiously long delay so as to prejudice Billings. The second defendant, Clark, was served on June 1, 2010, and Billings secured defaults against FHC and Clark on July 26, 2010. Significantly, that was before the expiration of the sixty days which the Federal Rules of Civil Procedure affords the federal government to file an answer or other responsive pleading. *See* FED. R. CIV. P. 12(a)(1)(A)(I) (private parties have 21 days to file an answer or other responsive pleading) and FED. R. CIV. P. 12(a)(2) (in official-capacity actions, the federal government has sixty days to answer a complaint after the US Attorney's Office has been served with the complaint).

On August 5, 2010, the USAO received the complaint and promptly asked Billings' counsel to cooperate in asking the court to set aside those defaults, and when Billings' counsel refused, the government filed its notice of removal on August 10, 2010. *See Green v. US*, 2007 WL 541968, *2 (W.D. Mich. Feb. 16, 2007) (Richard Alan Enslen, Sr. J.) ("Defendant removed the action and

substituted itself as a party defendant immediately upon becoming aware of Plaintiff's suit and the subsequent default. * * * It is true that in setting aside the default, a delay in recovery may result; yet this is not sufficient to find prejudice.") (citing *Berthelsen v. Kane*, 907 F.2d 617, 621 (6th Cir. 2000)); *Cotter v. US*, 2006 WL 3253289, *3 (W.D. Mich. Nov. 8, 2006) (Robert Holmes Bell, C.J.) (granting Rule 55(c) motion to set aside default in medical-malpractice action where the US Attorney's Office received a copy of the complaint from HHS on May 15, 2006, after default had been entered, and filed its notice of removal on June 2, 2006 after plaintiff's counsel refused to voluntarily set aside the default; "The delay from the time the [USAO] learned of the case until the removal and the motion to set aside the default was not significant."). Nor has Billings identified any precedent suggesting that she will be deemed "prejudiced" by simply being required to demonstrate her compliance with a clear federal statute, the FTCA, like any other party who seeks to impose civil liability on the federal government for the alleged wrongdoing of its employees. *See Green*, 2007 WL 541968 at *2 (Enslen, J.) ("The fact [that] plaintiff will face dismissal does not weigh in favor of finding prejudice where the dismissal is the product of Defendant's meritorious defense, as well as Plaintiff's failure to exhaust the administrative remedies under the FTCA before filing suit.").

Therefore, the court will grant the government's request to set aside the default.

Billings Has Not Shown the Requisite Exhaustion of Administrative Remedies.

"'The United States, as sovereign, is immune from suit save as it consents to be sued'", *Ellison v. US*, 531 F.3d 359, 361 (6th Cir. 2008) (quoting *US v. Sherwood*, 312 U.S. 584, 586 (1941)), "'and the terms of its consent to be sued in any court defines the court's jurisdiction to

entertain the suit.'" *US v. Testan*, 424 U.S. 392, 399 (1976) (quoting *Sherwood*, 312 U.S. at 586). Therefore, to bring a tort action against the federal government, the plaintiff must first establish that the federal government has waived its sovereign immunity, *Blakely v. US*, 276 F.3d 853, 864 (6th Cir. 2002) (citing *Lundstrum v. Lyng*, 954 F.2d 1142, 1145 (6th Cir. 1991) (per curiam) (citations omitted)), and "'[t]he federal-question jurisdictional statute [28 U.S.C. § 1331] is not a general waiver of sovereign immunity.'" *Toledo v. Jackson*, 485 F.3d 836, 838 (6th Cir. 2007) (quoting *Whittle v. US*, 7 F.3d 1259, 1262 (6th Cir. 1993)); *cf. Coggeshall Dev. Corp. v. Diamond*, 884 F.2d 1, 4 (1st Cir. 1989) (making a similar point about 28 U.S.C. § 1631).

The federal government has expressly waived its sovereign immunity to suit for tort actions under the circumstances and conditions outlined in the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*, but the remedies provided by the FTCA are exclusive, barring the pursuit of any other civil action or proceeding against the government and its employees, 28 U.S.C. § 2679(b)(1). The next subsection of the FTCA, 28 U.S.C. § 2679(b)(2) creates two exceptions to this exclusivity provision, but neither applies here: civil actions claiming that the federal employee violated the U.S. Constitution, and civil actions claiming that the federal employee violated a federal statute "under which such an action against an individual is otherwise authorized."

The court determines that Billings's intended claims are subject to the requirements of the FTCA. Billings has not contested the sworn certifications averring that the FHC and physician's assistant Clark were deemed to be employees of the Public Health Service under 42 U.S.C. § 233 during the entire period in which the alleged medical malpractice occurred. The government has filed the requisite certifications to confer FTCA protection against claims regarding torts allegedly committed by FHC and Clark, and this court finds and certifies that Clark was acting within the

scope of his federal employment at the time of the alleged malpractice. *Contrast Sullivan by & through Lampkins v. Am. Cmty. Mut. Ins. Co.*, No. 98-4518, 208 F.3d 215, 2000 WL 263359, *3 (6th Cir. Feb. 28, 2000) (Nelson, Boggs, Batchelder) ("Shimp has not petitioned any court to find and certify that he was acting in the scope of his federal employment, nor has any court so found. The literal requirements of § 2679(d)(3) have thus not been met, and we will not go beyond the plain language of the statute to imply any additional methods of achieving substitution."). To contradict this certification and contest substitution of the federal government as the party defendant, Billings had to "produce evidence that demonstrates that the employee was not acting in the scope of [his federal] employment", *Singleton v. US*, 277 F.3d 864, 871 (6th Cir. 2002), and Billings has not done so. The government has done what is statutorily required to be substituted for FHC and Clark as the party defendant and to invoke the protections of the FTCA, and Billings presents no authority for this court to refuse to effect the substitution. The Internet materials which Billings presents do not undermine the conclusion that FHC was a federally supported facility and that PA Clark was acting within the scope of his employment when he committed the acts or omissions allegedly constituting malpractice. *See, e.g.,* P's Opp at 13 ("The active deception that the clinic is part of Mercy Health continues until today. The website for Muskegon Family Care states, 'Dr. Williams sold the clinic to Mercy Hospital and retired in 1993.' 'Mercy Hospital named the clinic Mercy Family Care Center.'") (citing Ex 10).

In turn, "'[a] prerequisite to suit under the FTCA . . . is the exhaustion by the plaintiff of administrative remedies.'" *Lascko v. Cleveland Police Dep't*, 2006 WL 2090168, *2 (N.D. Ohio July 25, 2006) (Ann Aldrich, J.) (quoting *Lundstrum*, 954 F.2d at 1145). Because the FHC and Clark were covered by the FTCA, Billings was required to submit a timely administrative claim to

the applicable agency, in this case the HHS, and to exhaust her administrative remedies before filing suit. "'To the extent that plaintiff is asserting a claim for 'money damages for injury or loss of property or *personal injury or death* caused by the negligent or wrongful act of any employee of the government while acting within the scope of his office or employment,' the Federal Tort Claims Act, 28 U.S.C. § 2675, requires that she first pursue and exhaust administrative remedies." *McMahon v. Ross*, 2007 WL 2327058, *3 (M.D. Tenn. Aug. 10, 2007) (emphasis added).

> With regard to what constitutes an administrative claim, an FTCA regulation provides that
>
>> [f]or purposes of the provisions of 28 U.S.C. 2401(b), 2672, and 2675, a claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident; and the title or legal capacity of the person signing, and is accompanied by evidence of his authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian, or other representative.

28 C.F.R. § 14.2(a). The claim must have been presented "to the Federal agency whose activities give rise to the claim", 28 C.F.R. § 14.2(b), in this case HHS, and once that is done, the agency is required to rule on the claim within six months or the claimant may bring suit in federal court, *Holt v. Morgan*, 79 F. App'x 139, 141 (6th Cir. 2003) (per curiam) (citing *Glarner v. US Dep't of Veterans Admin.*, 30 F.3d 697, 700 (6th Cir. 1994)). The requirement of a sum certain in damages sought is intended to promote the expeditious settlement of FTCA claims and to ensure that the agency has the basic information it needs to make an informed decision on settlement and initiate settlement proceedings. *See Shelton v. US*, 615 F.2d 713, 715-16 (6th Cir. 1980). "From the amount of damages sought, the agency can often determine (a) whether or not settlement negotiations will require the services of the Attorney General's Office and (b) the probable source of funds for

payment of an award." *Shelton*, 615 F.2d at 715.

It is undisputed that Billings never submitted anything to HHS which could be construed as an administrative claim within the intendment of the FTCA; on the contrary, Billings' opposition brief acknowledges that her Notice of Intent did not specify a sum certain in damages sought, nor did she send it to HHS as required by the regulations, *see* P's Opp (Doc 17) at 9 and P's Opp Exs 4-5 (Notice of Intent sent August 31, 2009 and Amended Notice of Intent sent September 15, 2009); *see also* P's Opp at 6 ¶ 14 (signed receipts showing that FHC and Clark received the notices shortly after they were mailed) (citing Ex 6). Now, nearly five years have passed since the decedent's death on December 2, 2005. The government submits an affidavit from an HHS attorney stating as follows:

> 1. \* \* \* I am familiar with the official records of administrative tort claims maintained by the Department as well as with the system by which those records are maintained.
>
> 2. The Department has a Claims Branch that maintains in a computerized database a record of administrative tort claims filed with the Department, including those filed with respect to federally supported health care centers that have been deemed to be eligible for Federal Tort Claims Act malpractice coverage.
>
> 3. As a consequence, if a tort claim had been filed with the Department with respect to MGH Family Health Center d/b/a Muskegon Family Care, its approved delivery sites, or its employees or qualified contractors, a record of that filing would be maintained in the Claims Branch's database.
>
> 4. I caused a search of the Claims Branch's database to be conducted and found no record of an administrative tort claim filed by Brenda Billings-Carter, Ann Billings or an authorized representative relating to Mgh Family Health Center d/b/a Muskegon Family Care or William A. Clark, PA-C.

Declaration of Meredith Torres, Esq., Senior Attorney in HHS Office of the General Counsel's General Law Division - Claims and Employment Law Branch, executed Aug. 18, 2010, at 1-2.

The FTCA required Billings to file an administrative claim no more than two years after her claim accrued. Federal law determines when a medical-malpractice claim accrues for purposes of the FTCA, *see Chomic*, 377 F.3d at 610, and such a claim generally accrues at the time of the plaintiff's (in this case the plaintiff's decedent's) injury, i.e., the time of the late Ms. Billings' death, *see Hertz v. US*, 560 F.3d 616, 620 (6th Cir. 2009) (quoting *US v. Kubrick*, 444 U.S. 111, 120 (1979)). The accrual of the claim was not delayed until Billings learned that the acts leading to the injury may constitute malpractice; rather, the claim accrued as soon as she, "'armed with the facts about the harm done to [her decedent], can protect h[er]self by seeking advice in the medical and legal community.'" *Hertz*, 560 F.3d at 618 (quoting *Kubrick*, 444 U.S. at 123), except for a wrongful-death claim, which accrues at the date of death.

**Thus, for purposes of the FTCA, the plaintiff's causes of action accrued at or very shortly after the time of the late Ms. Billings' death** (after the plaintiff was able to view the death certificate and the autopsy report), because the plaintiff acknowledges that before the death, the plaintiff knew that the FHC had tested and treated the decedent for hypertension and other cardiac issues, that the FHC performed an electrocardiogram and other heart tests on the decedent, and that the decedent had a heart monitoring device. Against this backdrop, the plaintiff's causes of action could not have accrued later than the time when the death certificate was made available, because the certificate identified the cause of death as "pending - ventricular arrhythmia" and noted that hypertension, the very condition for which FHC had treated the decedent, was a significant contributing factor. *See* Doc 18-1 at ¶¶ 10-11 and Doc 18-3 at 271 and Doc 18-5 at ¶ 16; *cf. Michigan United Food & Commercial Workers Unions and Drug & Mercantile Employees Joint Health & Welfare Fund v. The Muir Co., Inc.*, 992 F.2d 594, 598 (6th Cir. 1993) (citing *Modin v. NY*

*Cent. Co.*, 650 F.2d 829, 834 (6th Cir. 1981)). Shortly thereafter, the forensic autopsy report indicated that the cause of death was "sudden cardiac death due to primary cardiac arrhythmia", Doc 18-5 at ¶ 16. For these reasons, the court agrees with the government that "[a]fter the decedent died from a sudden cardiac event – despite the FHC's recent tests and treatment for cardiac issues – Plaintiff was on inquiry notice of the claims. If she had taken any reasonable steps to obtain the medical records at that time or to contact an attorney, she could have filed well within the [two-year FTCA] limitations period." Gov's Reply at 7.[2]

The plaintiff avers that "[a]t no time prior to being told by Attorney Gryson in August 2010 did I have any belief or any suspicion that any provider at the clinic was an employee of the United States." Unsigned, undated, unexecuted affidavit of Brenda Billings-Carter ¶ 9. But our circuit holds that "[n]either plaintiff's lack of knowledge regarding [the original named defendant's] federal employment nor the United States' removal of this case from state court to district court eliminates the jurisdictional requirement that a timely administrative claim be filed." *Rogers v. US*, 675 F.2d 123, 124 (6th Cir. 1982) (per curiam) (citing *Meeker v. US*, 435 F.2d 1219 (8th Cir. 1970)); *accord Gould v. HHS*, 905 F.2d 738, 745 (4th Cir. 1990) (for FTCA purposes, it was irrelevant whether plaintiff knew that the healthcare providers would be deemed federal employees). The court also rejects, as irrelevant and unsubstantiated by record evidence, any insinuation by Billings that the

---

[2]

Billings relies on the notion that she was the only available representative of the decedent's estate, and that under Michigan law, she could not have brought an action until she was appointed as such a representative, which did not occur until August 26, 2009. *See* P's Opp at 5 ¶ 10. But as the government correctly points out, an administrative claim could have been filed by at least one of the decedent's three children: the decedent's daughter Shaqueata [sic] Bell reached the age of majority, eighteen, on August 22, 2005, more than three months before the decedent died. *See* P's Opp at 4 ¶ 2. Billings fails to explain why she or the decedent's older daughter did not seek and obtain appointment as representative of the estate far sooner than August 26, 2009, which was about three years and nine months after the decedent's December 2, 2005 death.

Family Health Center somehow concealed its status as a federally supported facility. In short, Billings fails to show any concealment or other misconduct by the government, the FHC or Clark which would equitably toll the FTCA's two-year limitations period, nor does she establish any other basis for tolling under federal law, which controls. The FHC/Clark's alleged failure to inform the decedent of abnormal test results and to refer her for further care, while they might or might not support various claims under Michigan law, have no bearing on the accrual of the plaintiff's claim *under federal law* at or shortly after the decedent's death.[3]

As the Supreme Court has held, "'limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied.'" *Chomic v. US*, 377 F.3d 607, 615 (6th Cir. 2004) (quoting *Lehman v. Nakshian*, 453 U.S. 156, 160-61 (1981)). Accordingly, pursuant to 28 U.S.C. § 2675(a) and FED. R. CIV. P. 12(b)(1), the court must dismiss the complaint for lack of subject-matter jurisdiction. *See, e.g., Dietrich v. US*, 2009 WL 1586204, *3 (W.D. Mich. June 4, 2009) (Maloney, C.J.) (dismissal would be appropriate if plaintiff filed amended complaint invoking the FTCA, because "[u]nder the FTCA, [plaintiff] cannot bring an action against the United States until she presents her claim to the appropriate federal agency for decision. Without any showing that [she] exhausted her administrative remedies as to her proposed FTCA claim, an amendment would be futile.'") (quoting *Switzer v. Runyon*, 1998 WL 70606, *3 (N.D. Ill. Feb. 11, 1998) (citing 28 U.S.C. § 2675(a)); *Hatcher v. Shelton*, 2008 WL 4107761, *6 (E.D. Tenn. Aug. 28, 2008) (dismissing prisoner's FTCA claim because, *inter alia*, he failed to exhaust administrative remedies); *cf. Giesse v. HHS*, 522 F.3d 697 (6th Cir. 2008) (Griffin, J.)

---

[3] Even if Billings were to submit such a claim to HHS now, it would be untimely. Consequently, it would be futile to stay the case to afford Billings an opportunity to file and pursue an administrative claim.

(declining to review agency determination and stating, "[42 U.S.C.] section 405(h) clearly prohibits judicial review of plaintiff's claims absent exhaustion of available administrative remedies.").[4]

## ORDER

Defendant's "motion to set aside defaults and dismiss plaintiff's claims" **[Doc #12] is GRANTED**.  The complaint is **DISMISSED** for lack of subject-matter jurisdiction.

The separate final judgment required by FED. R. CIV. P. 58 will issue contemporaneously.

This case is **TERMINATED** and **CLOSED**.

This is a final and immediately appealable order.  *See Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 595 (6th Cir. 2006) (district court's ruling on FED. R. CIV. P. 55(c) motion to set aside default is reviewed for abuse of discretion) (citing *O.J. Distrib.*, 340 F.3d at 352).

**IT IS SO ORDERED** on this 3rd day of November 2010.

/s/ Paul L. Maloney
Honorable  Paul L. Maloney
Chief United States District Judge

---

[4] Given this disposition, the court need not address the government's alternative argument that entry of default was improper *ab initio* under FED. R. CIV. P. 55(d).  *See* Gov's Reply at 5 (noting that Billings did not address its Rule 55(d) argument).